UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                      Case No. 18-cr-20794
                                                 Honorable Thomas L. Ludington

v.

MICHAEL LEE JOHNSON

    Defendant.
_____/

## ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE IN PART AND GRANTING DEFENDANT'S MOTION TO EXCLUDE 404B EVIDENCE IN PART

On March 5, 2019, Plaintiff filed a "motion to suppress victim's prior allegations of sexual assault" pursuant to Federal Rule of Evidence 412, the federal rape-shield law. The Court denied the motion without prejudice, explaining that the Rule 412 is inapplicable as Defendant is not charged with sexual misconduct. ECF No. 36.

On May 20, 2019 Plaintiff filed another motion to exclude evidence relating to C.J.'s (the alleged victim in this case) prior allegations of sexual assault against another man, F.T. ECF No. 37. It is important to note at the outset that the Court initially denied Plaintiff's motion solely because Rule 412 is inapplicable, and Plaintiff identified no other reason for exclusion. Plaintiff now identifies additional bases for the exclusion of any evidence, questioning, or argumentation relating to C.J.'s prior allegations of sexual assault against F.T.

**I.**

According to the Defendant, he maintained an intimate, live-in domestic relationship with C.J. from March 2018 through October 24, 2018. ECF No. 50, PageID.211. The government's first superseding indictment charges, among other things, that Defendant unlawfully imprisoned

C.J., sought to strangle and suffocate her and then sought, by intimidation and threats, to convince her to lie when called as a witness. ECF No. 9. The government contends that C.J. is not the first of the Defendant's victims: it seeks to offer the testimony (under Rule 404(b)) of R.T., a former girlfriend of the Defendant, that he stalked, assaulted, and unlawfully imprisoned her at some unidentified period of time. ECF No. 21.

By supplemental filing, the government (applying similar reasoning) added S.R. to its witness list, contending that she is a former wife of Defendant who was similarly mistreated. ECF No. 38. Indeed, in the government's latest filing the government contends that it has learned of yet another witness, Defendant's mother Robin Johnson, who will testify that not only did she personally observe Defendant holding R.T. against R.T.'s will but, in fact, Defendant held Robin Johnson against her will as well. ECF No. 51.

Defendant alleges with some force that C.J.'s testimony about his mistreatment of her is false and that in fact she has falsely accused prior romantic partners, specifically F.T., of assaulting her as well. Defendant contends that he should be permitted to introduce evidence of F.T. and C.J.'s relationship because if reflects a pattern of falsely accusing prior romantic partners of misbehavior. According to the Defendant, he is at least the second victim of C.J.'s scorn and retaliation.

## II.

### A.

Plaintiff argues that evidence of C.J.'s alleged prior false accusation about F.T. is not admissible under Federal Rule of Evidence 608. Rule 608(a) provides that "a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that

character." However, rule 608(b) provides that "extrinsic evidence is not admissible to *prove specific instances of a witnesses conduct* in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b) (emphasis added). But, "the court may, on cross-examination, allow them to be *inquired into* if they are probative of [the witnesses] character for truthfulness." *Id.* (emphasis added).

Here, Defendant blurs the distinction between the evidence he seeks to offer about C.J's character generally (including her character for truthfulness), and the "evidence" he seeks to offer as to whether she lied in the specific instance of her rape allegations against F.T.. Defendant is entitled to cross examine CJ about whether she made prior false accusations but will be prohibited from offering any extrinsic evidence.

Plaintiff contends that Defendant should not be permitted to inquire of C.J. about F.T. at all:

> When defendant's "evidence" that the prior allegations are false consist of the fact that they were not prosecuted, the Court has held that to be insufficient to show that the allegations were false. *United States v. Crow Eagle*, 705 F.3d 325, 329 (8th Cir. 2013). In another case, the Court found that even a finding by the Department of Children and Family Services that sexual assault allegations are "unfounded" is not sufficient proof that the prior allegations were false. *Cookson v. Schwartz*, 556 F.3d 647, 655 (7th Cir 2009). Even a criminal trial resulting in an "acquittal regarding the victim's prior allegation of sexual assault was not dispositive of the falsity of the allegation." *United States v. Erikson*, 76 M.J. 231 (2017).

But these cases do not support the proposition that the defendant must satisfy the court that he will be able to prove C.J.'s allegation against F.T. false (or legitimately call the allegation into question), before he is even permitted to ask her if she was telling the truth. Plaintiff does identify one case in support of this argument:

> The Court addressed this very issue in *United States v. Crowley*, 318 F.3d 401, 417-18 (2nd Cir. 2003). In that case, the Court held it was appropriate to preclude the inquiry all together when the only thing that would happen before the jury

would be the question and the denial by the witness because "the prejudicial impact of the engendering speculation about the subject outweighed the minimal probative value of permitting the jury to evaluate [the witness's] demeanor during the question and answer" because it would be more prejudicial than probative. Id. at 418.

Here, this Court respectfully parts ways with the Second Circuit's approach, as it appears at odds with the plain text of Rule 608(b) and the logic justifying the rule. Although it is quite likely that C.J. will testify that her allegations against F.T. were truthful, it is possible that she will testify that she falsified those allegations, which would unquestionably be relevant to the jury in evaluating her veracity as a witness under rule 608(b). The rule does not prohibit the inquiry itself, but only prohibits the cross-examiner from offering extrinsic evidence of the bad act in question, as the Third Circuit aptly stated in *Georgiou*:

> Georgiou's rights under the Confrontation Clause were not implicated here, as the record reflects that the District Court allowed Appellant to cross-examine Waltzer about his alleged criminal acts, and limited further questioning only after Waltzer denied engaging in misconduct . . . The District Court's imposition of a reasonable limit on the scope of cross-examination was permissible in order to strike a balance between the constitutionally required opportunity to cross-examine and the need to prevent repetitive or abusive cross-examination.

*United States v. Georgiou*, 777 F.3d 125, 145 (3d Cir. 2015). Defendant will be permitted to ask C.J. if the allegations were true.

**B.**

**i)**

Defendant also argues that he should be able to offer further evidence about C.J.'s accusations about F.T. under Rule 404(b). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Defendant argues that C.J.'s accusation against F.T. of sexual assault by choking exemplifies her

modus operendi of making such allegations against former boyfriends after she is "scorned" by them. Even if this assertion was based in fact, it is highly questionable whether this is sufficiently idiosyncratic to qualify for admission under rule 404(b),[1] or that any such single prior act could establish such "a pattern." More importantly, the comparison Defendant attempts to make is not based in fact. A review of the records from the Mount Pleasant Police Department and the Saginaw Chippewa Tribal Police[2] reveals that C.J. did not, in fact, accuse F.T. of choking her, but rather accused him of holding a knife to her throat. Additionally, F.T. was accused of sexual assault, whereas Defendant is not. It is also not at all apparent from the records that F.T. was C.J.'s boyfriend, only that they had a period of romantic involvement. To summarize, the supposed "modus operendi" of C.J. consists solely of accusing former romantic partners of assault and (excluding Defendant), the sample size of "former romantic partners" is one, F.T., who allegedly raped C.J. more than six years prior to Defendant's alleged assault of C.J.

Moreover, in order to establish that C.J. had a modus operendi of falsely accusing prior romantic partners of assault, Defendant would first have to present relevant evidence that her allegations against F.T. were in fact false. *See United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001) (requiring sufficient evidence that the prior act occurred). With one exception, none of the "evidence" he seeks to present is in any way relevant to that issue. First, he argues that he can produce witnesses who will testify that "C.J. and F.T. were an intimate couple that had a history that went back to high school. F.T. was the best friend of C.J.'s older brother Michael, F.T. and Michael graduated together, subsequently moved to Arizona after High school and pursued jobs.

---

[1] This is also somewhat of an anomalous use of modus operendi which is not, in and of itself, a non-propensity use of prior acts evidence, nor is it one of the enumerated examples of permissible uses under rule 404(b). Modus operendi is more commonly used to establish identity. Where the identity of the perpetrator is disputed, the fact that the alleged perpetrator previously committed a crime under very similar circumstances is relevant to establish that he/she is also the one who committed the offense at issue. Here, by contrast, there is no dispute that C.J. is the individual who accused F.T. as well as the Defendant of assault.

[2] Which were produced by the Government for *in camera* review, and filed contemporaneously under seal.

Also, F.T. was very familiar well known to C.J.s parents Wayne and Deborah Johnson of Rosebush, MI." ECF No. 43, PageID.143. The fact that F.T. and C.J. had a long romantic history dating back to high school, and that F.T. was well acquainted with C.J.'s family members, does not undermine her allegations that she was sexually assaulted by F.T.

Next, Defendant contends he has additional "circumstantial evidence" of the fact that C.J. was lying about F.T., namely that:

> C.J. was a 280lb woman who receives "Indian Per Cap" money. F.T. was a 180lb 6'2, blonde hair, blue eyed white man from California. F.T. possessed and image, character C.J. was drawn to. Much in the same manner of defendant Michael Johnson. C.J. used her Indian money to lavish both boyfriends with clothes, food, drugs, trips, hotels, expenses C.J. paid for Defendants criminal lawyer Matthew Boncher of Bay City over the summer of 2018. C.J. also bought clothes, food, commissary, paid hundreds of dollars of phone calls from Saginaw co. jail; as well as paying for expenses/care of defendants 2 1/2 yr. old daughter with another woman Brandy Kenyon. These aforementioned individuals will testify

*Id.*, PageId.144.

Defendant's argument here is less than clear. The Court's best guess is that he is arguing that F.T. couldn't have sexually assaulted C.J. because he weighed less than her[3] and that he would have had no reason to do so because she "lavish[e]d" him with her "Indian per cap money." *Id.* This discussion does not have a modicum of relevance to the veracity of C.J.'s allegations against F.T. At this point in his response (the bottom of page 2, ECF No. 43), Defendant fully digressed into an unrelated discussion of his own relationship with C.J. This discussion has no relevance to the veracity of C.J.'s allegations against F.T.

Defendant also seeks to introduce evidence that the U.S. Attorney's office filed charges against F.T. and subsequently dismissed them without prejudice. Defendant underscores the fact that this Court previously noted that the filing and dismissal of criminal charges has some

---

[3] Defendant also appeared to suggest during oral argument that the vehicle in question (a 2010 Dodge Avenger, which is a mid-size sedan) was not large enough to comfortably facilitate intercourse for two people weighing a combined 460 lbs. Again, this is a far cry from "evidence" that C.J.'s rape allegations were false.

relevance to the veracity of C.J.'s allegations against F.T.. After considering the records reviewed *in camera*, the Court concludes that the evidence must nevertheless be excluded under Rule 403, because its minimal probative value is substantially outweighed by a danger of confusing the issues and wasting time. An *in camera* review of the police reports revealed that C.J.'s narrative of the events on the day in question was consistent and was not contradicted by the witnesses who spent time with C.J. and F.T. on the night in question.

F.T., on the other hand, told police that C.J. was aggressive and violent toward him on the night in question and that she got kicked out of the bar for being too drunk. Ex. A at 9. J.M. however, told police that C.J. did not get kicked out of the bar, but that F.T. tried to start a fight with a college kid multiple times and that he (J.M.) had to drag F.T. out of the bar. *Id.* at 33. Another witness, A.A. (who F.T. identified as the individual who would corroborate his narrative), told police that he did not recall F.T. or C.J. causing problems at the bar but that he did recall F.T. getting into a fight at the casino and stated that F.T. was a "time bomb" who could be set off very easily. *Id.* at 35.

The government also provided email correspondence between the AUSA and the Saginaw Chippewa Police which reveals that the investigation into C.J.'s allegations against F.T. were ongoing after the dismissal of charges, and the investigation only concluded once F.T. passed away. ECF No. 37-2. This undermines Defendant's suggestion that the government dismissed the charges because it determined C.J. was lying.

Finally, the government recently filed a supplemental brief which suggests that Defendant may not in fact have a good faith belief that C.J. lied about F.T. but that Defendant may be attempting to fabricate a narrative for the jury. According to the government, Defendant recently sent a letter to his mother telling her: "you become my biggest witness. Lie about the

[F.T.] case and tell the jury she told you she hated Frank for breaking her heart and wanted him gone forever." ECF No. 47. The government did not produce the letter in question but indicated that it is available for *in camera* review. Defendant was provided an opportunity to respond to the government's supplemental brief. He filed his response on July 2, 2019 (ECF No. 49) but did not discuss the letter to his mother.

In sum, Defendant's "evidence" that C.J. falsely accused F.T. of rape does not qualify for admission under Rule 608(b), which prohibits the cross-examining party from offering extrinsic evidence to prove specific instances of conduct. Defendant's "evidence" also fails to qualify for admission under rule 404(b).

The government's motion in limine will be granted in part. Pursuant to Rule 608(b), (assuming C..J. testifies) Defendant will be permitted to inquire as to whether C.J. falsely accused F.T. of rape. If she denies falsely accusing F.T., the inquiry must cease. Defendant will not be permitted to insert testimony in the form of a question, nor will he be permitted to argue with the witness or provide any extrinsic evidence related to the rape allegations against F.T.. Pursuant to Rule 608(a), Defendant will also be permitted to offer his own testimony or testimony of other witnesses concerning C.J.'s *general* reputation for truthfulness. Neither Defendant nor any witnesses called by Defendant will be permitted to offer their opinion as to whether C.J. lied about the rape allegations against F.T..

### ii)

Much like Defendant, the government has directed substantial attention to factual events other than those set forth in the superseding indictment. The government seeks to introduce testimony under Rule 404(b) from three women who Defendant allegedly mistreated, including his former girlfriend, R.T., his former wife, S.R., and his mother Robin Johnson. Specifically, the

government states that R.T. and S.R. will testify that they were strangled and unlawfully imprisoned, among other things, and that Defendant's mother Robin Johnson will testify that she was held against her will and also observed Defendant holding R.T. against R.T.'s will.

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). There also must be sufficient evidence that the prior act occurred. *Id.* Similar acts evidence "may be admissible for another purpose [other than showing character], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The list is not exhaustive. *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991).

First, the government argues that the evidence is relevant to corroborate C.J.'s allegations, which Defendant contends are fabricated. The government cites *Blakenly* for the proposition that corroboration of a witness's testimony is a permissible purpose under Rule 404(b). ECF No. 51, PageID.237 (citing *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991). It *Blakenly*, however, the fact to be corroborated was not simply that the defendant committed the crime charged because he previously committed similar crimes. Rather, the government sought to corroborate the witness's testimony that the defendant and his alleged co-conspirator met in prison in order to demonstrate "the plausibility of these two individuals from two distant regions of the country entering into a criminal enterprise. The government sought to establish the specific opportunity presented to Kutnyak to establish an initial association with Wolk which might resume after their incarceration." *Id.* The defendant had attacked the credibility of the witnesses' testimony, and the government rehabilitated that testimony with prison records demonstrating that defendant and his co-conspirator did indeed meet in prison. In

other words, the corroborative testimony was offered to prove *opportunity* (to enter into the criminal enterprise), not character.

"The federal courts have uniformly held that 'evidence of other crimes or acts is admissible to corroborate evidence *that itself has a legitimate non-propensity purpose.*'" *Johnigan-Bey v. Bauman*, No. 07-10843, 2009 WL 4948363, at *12 (E.D. Mich. Dec. 14, 2009) (quoting *United States v. Bowie,* 232 F.3d 923, 933 (D.C.Cir.2000) (emphasis added)). The usage of corroborative testimony in *Blakenly* was consistent with that principle, as the evidence presented corroborated the existence of opportunity, and opportunity is a non-propensity purpose. Here, by contrast, C.J. has accused Defendant of a crime, and he contends she is lying. The government seeks to introduce evidence that he committed the same crime previously. This is not a "legitimate non-propensity purpose." *Id.* In other words, where the fact to be "corroborated" is simply that the defendant committed the crime he is accused of, evidence that he committed the same crime previously is inadmissible under 404(b)(1).

Next the government argues that the evidence is relevant to Defendant's intent or state of mind, because:

> there is a likelihood that defendant will claim that when he restricted C.J.'s movement in the bedroom on October 23, 2018 . . . that he did not intend to imprison her or that he did not appreciate the wrongfulness of his unlawful imprisonment and that when he touched her neck it was not for the purpose of strangling her. He has already made statements that he stood in front of C.J. in an effort to continue their conversation not to imprison her. Proof that defendant unlawfully imprisoned three other woman bears directly on defendant's intent and state of mind. Defendant has also made prior statements that he lifted his arm and it accidentally made contact with C.J.'s neck. Proof that defendant intentionally strangled multiple other victims bears directly on his intent and state of mind when it comes to the strangulation of C.J. "Specifically, it tends to show [he] was aware of the wrongful behavior. . . . The fact that [defendant] had committed a similar kidnapping offense in the past made it more likely that he understood that the activity underlying the charged offense was wrong as well." *United States v. Diekhoff*, 535 F.3d 611, 618 (7th Cir. 2008) citing *United States v. Bradshaw*, 935 F.2d 295, 301 (D.C. Cir. 1991).

The citations to *Diekhoff* and *Bradshaw* are inapplicable, as both involved an insanity defense, which placed the defendant's state of mind in issue, justifying the admission of prior criminal acts to demonstrate that the defendant appreciated the wrongfulness of his conduct. Here, Defendant has not asserted an insanity defense, and there is no requirement that the government demonstrate that he "appreciated the wrongfulness" of strangulation, suffocation, and unlawful imprisonment. Moreover, both *Diekhoff* and *Bradshaw* involved prior criminal convictions. A conviction puts the defendant on notice that the behavior is wrongful, which undermines his ability in a subsequent case to denying his knowledge of the wrongfulness of the behavior. Defendant was not convicted of assaulting S.R., R.T. or his mother.

However, evidence that Defendant imprisoned and choked S.R. and R.T. is potentially admissible to establish intent and lack of accident if Defendant testifies and admits to committing the acts, or committing them in part, but denies that he intended to imprison or choke C.J.. Evidence that he did the same thing to two other women would undermine a claim that his actions were unintentional and/or inadvertent, provided that the 404(b) evidence is "substantially similar and reasonably near in time.[4] *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008). Moreover, the evidence must not be more prejudicial than probative under rule 403. The government did not explain in its 404(b) notices when the alleged prior acts took place and will need to supply that information prior to the admission of the 404b evidence.

Moreover, only those acts that are responsive to the hypothetical defenses of accident or lack of intent can be admitted. Thus, if Defendant testifies as the government predicts he will,

---

[4] Notably, because the crimes of unlawful imprisonment and assault of an intimate partner strangulation (Counts I-III) are not specific intent crimes, Defendant's intent is not in issue simply by virtue of a not guilty plea, and his intent will only be placed in issue if he testifies that when he touched C.J.'s neck it was not for the purpose of strangling her, and that when he stood in the doorway it was not for the purpose of imprisoning her. *See id.* The 404(b) evidence would only then be admissible in rebuttal, but not in the government's case in chief.

much of the evidence the government seeks to admit would nonetheless have to be excluded, including 1) that he threw a brick through R.T.'s parent's window, 2) that he kicked her cats, 3) that he stalked her, harassed her, and wrote her letters, 4) that defendant is manipulative and can fake cry at the drop of a dime. None of this is probative of Defendant's intent to choke and unlawfully imprison C.J.. The testimony regarding prior acts would have to be limited to the alleged acts of choking and unlawfully imprisoning, not to miscellaneous bad acts.

### III.

Accordingly, it is **ORDERED** that the government's motion in limine, ECF No. 37, is **GRANTED** in part, as set forth above.

It is further **ORDERED** that Defendant's motion to exclude 404(b) evidence, ECF No. 50, is **GRANTED** in part as set forth above.[5]

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: July 19, 2019

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Michael Lee Johnson,** Clare County Jail, 255 W. Main Street, Harrison, MI 48625 by first class U.S. mail on July 19, 2019.

s/Kelly Winslow
KELLY WINSLOW, Case Manager

---

[5] The admissibility of 404(b) evidence to establish intent or lack of accident can be revisited if Defendant testifies at trial. More detail would have to be provided to the Court regarding the timing and circumstances of those prior bad acts, and the scope of the witnesses' testimony would have to be substantially limited (as compared to the miscellaneous bad acts contained in the current 404b notices (cat kicking, etc)).