UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        Case No.  18-CR-20794

                                        Hon. Thomas L. Ludington

MICHAEL LEE JOHNSON,

      Defendant.

_____

## GOVERNMENT'S TRIAL BRIEF
_____

I.   **STATEMENT OF FACTS**

On or about October 23, 2018, Michael Lee Johnson, a non-Indian, was arguing with his intimate and dating partner, C.J., an Indian. The argument took place in a second story bedroom in the victim's home which is on the Isabella Reservation. During the argument, the victim attempted to leave the room numerous times over the course of 30 minutes. During those attempts, suspect physically prevented her from leaving. Suspect pushed her down hard onto the bed every time she tried to leave. During that time, victim asked suspect "Can I go?" numerous times, each time suspect responded with "No Bitch, sit down" as he pushed her onto the bed. At one point during that incident, suspect told victim that he would throw her out the second story window if she called the police.

On October 24, 2018, after suspect was told to move out of the victim's residence he physically assaulted her in the home. This assault consisted of suspect grabbing the victim by both arms and slamming her into a wall. While victim was against the wall, suspect grabbed her by the throat and strangled her. While strangling her, suspect also banged the victim's head against the wall. The victim said that it was difficult to breathe and she believed the suspect was going to kill her. During the strangulation, the suspect said "I should fuck you up." Eventually the strangulation ended. Then suspect picked the victim up by the throat and

slammed her onto the stairs. Also at this time, victim screamed for help hoping the neighbors would hear her. When she did this, suspect put his hand over her nose and mouth which prevented her from being able to breathe or scream for help.

Once the assaults in the house ended, defendant went outside and got into victim's car where her six and nine-year-old daughters were located. Defendant said "I gotta go" and "let's go." Victim got into the driver's seat and drove suspect to Saginaw. During the drive, the car crossed the boundary line from being on the reservation to being off the reservation. Throughout this ride, suspect yelled at the kids, struck the victim numerous times, and said "I got something for you bitch. Imma shoot her, Imma take care of you." Once they arrived at a residence in Saginaw, suspect slapped victim in the face, took money from her, and tried to take her keys away from her. Additionally, the earlier assault caused an injury to victim's arm to the extent that she believed it was broken. Victim told this to the suspect. The suspect offered to go with her to the hospital. Victim declined and said she would drive herself. At that point, suspect instructed her to tell the hospital staff that she was moving a curio cabinet on the stairs which she dropped and that is what injured her arm.

The police observed numerous injuries on the victim including: red marks on her neck and face, a swollen arm, and victim provided the police a photograph

showing a bruise and cut on the inside of her thigh. C.J. reported that her back hurt and that she could not move her right arm and believed it was broken. It turns out the arm was not broken.

Shortly after that, suspect was arrested and has been locked up ever since. During that time, suspect has tried to call the victim numerous times but she has blocked the calls. Additionally, suspect has asked numerous people to contact the victim by phone or text and to pass on messages to her. Each time the victim has told the people to stop contacting her but the contacts have continued. During a jail call on October 25, 2018, suspect called a woman and told her that his case is going federal. He then asked that person to contact the victim and say "Michael doesn't deserve any more time. Whatever you got to do parting ways, just part ways. You know, leave the law out of this shit. Leave all the bullshit alone."

On November 1, 2018, victim received a letter from suspect from jail. In the letter suspect specifically instructs the victim to log in to his Facebook account. He asked her to post something on his feed. Not at the instruction of law enforcement, victim, on her own, logged into suspect's Facebook and reviewed his private messages. In those messages, suspect confessed to numerous people to most of what the victim said happened. Specifically, suspect says "I'm pretty sure I'm going to jail brother . . . I fucked up . . . I put hands on . . . I choked her, slapped

her. I jabbed her in the face, mouth . . . I think her arm is broken." In another

message, suspect said "I committed domestic assault." In another: "Domestic

Assault, man I need to go Something bad happened Serious . . . Ash I fucked up."

Defendant has written a ton of letters to our victim since the incident despite being

told numerous times not to do so. He is witness tampering in these letters as

outlined below.

| Post mark date: | Letter starts with: | page: | key parts: |
|---|---|---|---|
| 11/7/18 | I earn respect | 3 | Let me have my life. This charge the grand jury is looking at will put me away. |
| | | 5 | Forgiveness = healing . . . you still have your family, let me have mine! |
| | | 5 | Don't take anymore of my life. Let me go do my parole violation . . . you don't deserve to have this much power! I didn't do this to you. |
| | | 6 | Why destroy my life . . . what are you going to accomplish by putting me in federal prison? |
| | | 7 | let me be free. |
| 11/7/18 | Hey I know | 5 | please sit down somewhere alone, please clean your mind and think . . . Remove that day. That 24-hour period . . . I want to tell you the dreams I have & what path I will go if this were dismissed. |
| 11/8/18 | I love you Casey Dee | 2 | I asked specifically no law, don't want to lose my LALA . . . don't prosecute me . . . don't push the issue, just let me do a few months and start over for my baby and I. . . . Don't do this with the courts. |
| 11/9/18 | Domestic Assault | 1 | Why can't you tell them you don't want to pursue charges? |
| | | 2 | I'm praying you don't let the feds pick up charges. I'm literally praying . . . you will just tell them I DON'T WANT TO PURSUE THIS. |

| | | 2 | Do that in the end for me . . . make it right please. |
| | | 3 | If roles were reversed, regardless I would have reached out to you, I'd never testify on you. |
| 11/13/18 | Until you testify | 1 | So Wednesday will determine a lot . . . Federal rules state that statement at a hospital is only hearsay; they need you to prosecute me. Hmmm . . . my heart hopes you don't show up. So when the Feds convene Wednesday, you aren't there?! |
| 11/13/18 | [back of commissary] | | To err is human, to forgive divine. A few words, not testifying. |
| 11/19/18 | Why me? | 2 | "I wonder if you are going to testify against me? ... Tell me-what would you do if you lost your life, you sat rotting in here from me talking to police? What would you do about your Daughters? . . . why did you say all that, do all that. My life is perpetual hell now, agonizing pain, emptiness, sadness, regret. Why Casey? Why like this? |

## II. ANTICIPATED EVIDENTIARY ISSUES

### A.    The Defendant May Not Introduce His Own Prior Statements

The government anticipates that the defendant may attempt to introduce

his own prior oral, written, or recorded statements in order to establish or bolster

his claimed defense. Such statements would be hearsay and would inadmissible.

The statements are not admissible under Fed.R.Evid. 802(d)(2)(A), which allows

the use of an admission of a party opponent *against* that party. But this rule

"does not extend to a party's attempt to introduce his or her *own* statements

through the testimony of other witnesses."  *United States v. McDaniel*, 398 F.3d

540, 545 (6th Cir. 2005)(italics in original). If a defendant could present his own

prior statements under Fed.R.Evid. 801(d)(2), then a defendant "could effectuate

an end-run around the adversarial process by, in effect, testifying without

swearing an oath, facing cross-examination, or being subjected to first- hand

scrutiny by the jury."  *Id.* (*citing United States v. Ortega*, 203 F.3d 675, 682 (9th

Cir. 2000)). The Sixth Circuit reaffirmed this principle in *United States v. Ford*,

761 F.3d 641 (6th Cir. 2014). The court noted that the hearsay exception in

Fed.R.Evid 801(d)(2) does not extend to a party's attempt to introduce his own

statements through the testimony of other witnesses.  *Id.* at 652. The court also

rejected the defendant's claim that a failure to admit such evidence violated the

Confrontation Clause or was an abuse of discretion under the so-called rule of completeness. *Id.* ("precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause.") The court observed that "[r]ight or wrong, this court has acknowledged that under *Costner* [684 F.2d 370 (6th Cir. 1982)], '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" *Ford*, at 652 (citing *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013)(quoting *United States v. Shaver*, 89 F.App'x. 529, 533 (6th Cir. 2004))).

The Defendant has made statements to law enforcement and possibly to his friends and family through the course of the investigation in this case that could be viewed as incriminating. These incriminating statements are admissible against him, if the government chooses to admit them, under Federal Rule of Evidence 801(d)(2)(A) as admissions by a party- opponent.

## B. The Government May Introduce Limited Background Information on the Investigation

The Government may offer limited background information in order to show how and why this investigation was commenced. *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990); *United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990); *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985). Such information is not

offered for the truth of the matter asserted, but rather as relevant background information, and is therefore not inadmissible hearsay. *Levy*, 904 F.2d at 1030; *Freeman*, 816 F.2d at 563. "[A]n out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." *Love*, 767 F.2d at 1063. "The jury is entitled to know the setting of a case." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977). The Confrontation Clause does not apply to such background information. *See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004).

### C. Impeachment by Contradiction

Federal Rule of Evidence 608's restriction on other acts evidence apply only to efforts to attack or support a witness's credibility that are based on his or her character for truthfulness. Rule 608(b) does not bar extrinsic evidence of other acts that is offered for the purpose of impeachment by contradiction. "When a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact." *United States v. Crockett*, 435 F.3d 1305, 1313 (10th Cir. 2006) (citing *Walder v. United States*, 347 U.S. 62, 65 (1954)). "This is so even if the evidence elicited by the prosecution ordinarily might be collateral or otherwise inadmissible. This principle of cross-

examination is known as the doctrine of "specific contradiction.'" *Id*. (citations omitted.)

In *Walder*, the Supreme Court noted:

> Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him.  He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance upon the Government's disability to challenge his credibility.

*Walder*, 347 U.S. 62, 65 (1954).

The Ninth Circuit's decision in *United States v. Castillo*, 181 F.3d 1129 (9th Cir. 1999) is illustrative. On direct examination in a drug case, the defendant claimed that he would not have smuggled drugs "for a million dollars"; portrayed himself as an anti-drug counselor to youth, and said he never used drugs and wouldn't touch them. *Id*. at 1132. The district court allowed the government to present extrinsic evidence through a rebuttal witness to testify about the defendant's prior arrest for cocaine possession. As the court noted:

> [O]ne commentator has observed, "[c]ounsel and courts sometimes have difficulty distinguishing between Rule 608 impeachment and impeachment by contradiction." 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence*, '608.12[6][a] at 608-41 (2d ed.1999) (Weinstein). Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness' credibility in terms of his general veracity. In contrast, the concept of impeachment by contradiction

permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence:

> [D]irect-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral. This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.  2A Charles A. Wright & Victor J. Gold, Federal Practice and Procedure, § 6119 at 116-17 (1993).

*Id*. at 1132-33.

The court went on to state that impeachment by contradiction is properly considered under Rule 607, not Rule 608(b): The Second Circuit has noted that, "Rule 607 appears to allow the continuation of federal practice in admitting extrinsic evidence to impeach specific errors or falsehoods in a witness' direct testimony, subject to Rule 403 considerations." *Id*. at 1133. (citing *United States v. Benedetto*, 571 F.2d 1246, 1250 n. 7 (2d Cir. 1978)).

### D.    Admissibility of Business Records and Duplicates

The government may move to admit business records in this case. Such records made and kept in the regular course of business are admissible under Rule 803(6) of the Federal Rules of Evidence. That rule provides that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

It is not necessary that the authenticating witness be the actual recorder of the data or have personal knowledge of it. All that is required is that the witness be familiar with the record keeping system. *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986); *United States v. Reese*, 568 F.2d 1246, 1252 (6th Cir. 1977).

The Federal Rules of Evidence allow the use of duplicates to the same extent as originals unless there is a genuine question as to their authenticity. Fed. R. Evid. 1003. Federal Rule of Evidence 1001(4) defines "duplicate" to include photocopies.

The government hereby gives defendant notice that it plans to admit select Facebook records from Defendant's Facebook account which are self-authenticating via FRE 902(11). The records the government intends to admit

have been made available to defendant.

### E.    Admissibility of Recordings

The admission of recordings is a discretionary matter for the trial court. *United States v. Hughes*, 895 F.2d 1135, 1147 (6th Cir. 1990); *United States v. Enright*, 579 F.2d 980, 988 (6th Cir. 1978). In exercising its discretion, the court must decide if the tapes are: (1) authentic; (2) accurate; (3) trustworthy; and, (4) audible and sufficiently comprehensible for the jury to consider. *United States v. Wilkinson,* 53 F.3d 757, 761 (6th Cir. 1995) (citing favorably *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983)).

In making the decision to admit or exclude the recordings, the trial court may conduct an evidentiary hearing in order to listen to the relevant tape recordings to determine if they are audible and comprehensible. *See United States v. Scarborough*, 43 F.3d 1021, 1024 (6th Cir. 1994); s*ee also*, *United States v. Terry*, 729 F.2d 1063, 1068 (6th Cir. 1984). *Compare*, *United States v. Smith*, 537 F.2d 862, 864 (6th Cir. 1976) (inaccuracies held to be harmless error where defendant was aware of them and failed to object). Under *Robinson*, the final test for admission, assuming the tapes are authentic, accurate and trustworthy, is, are the unintelligible portions so "substantial as to render the recording as a whole untrustworthy." *Robinson,* 707 F.2d at 876.

The Sixth Circuit has held that tape recordings are admissible unless incomprehensible portions of the tape are so substantial as to render the recordings wholly untrustworthy. *United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992). "It is well settled that the decision to admit tape recordings at trial rests within the sound discretion of the trial court." *Id.* Courts also have the discretion to allow the use of accurate transcripts of tape-recorded conversations as an aid for the jury. *Id.*

Here, the recordings of the defendant are audible and comprehensible. The defendant has been provided with copies of the recordings. If need be, the police officers at the interview can be called to testify as to the recording device used and to the accuracy of the recordings.

The government also intends on using transcripts of the defendant recordings to aid the jury during the trial of this case. The use of transcripts, as an evidentiary aid without admission into evidence, is also a discretionary matter for the trial court. *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995); *United States v. Hughes*, 895 F.2d 1135, (6th Cir. 1990); *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986); *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983); *United States v. Crane*, 632 F.2d 663, 664 (6th Cir. 1980); *United States v. Vinson*, 606 F.2d 149, 155 (6th Cir.), *cert. denied*, 444 U.S. 1074 (1980);

*United States v. Enright*, 579 F.2d 980, 988 n.8 (6th Cir. 1978).

In *Vinson*, the trial court reviewed the recordings and transcripts before the trial, and submitted them to the jury <u>without</u> a stipulation as to their accuracy by the defendant. *Vinson*, 606 F.2d at 155. The Sixth Circuit has noted that while a stipulation as to accuracy is preferred, appellate review will focus on the defendant's opportunity to object and correct any errors in the transcripts. *Id.*

The Sixth Circuit reaffirmed its position of allowing the use of transcripts as an aid to the jury without a stipulation in *United States v. Hughes*. Citing *Robinson*, with approval the court stated:

> In the absence of the parties' stipulation to a transcript's accuracy, the transcriber should attest to the accuracy of the transcript and the trial court should make an independent determination of its accuracy by listening to the tape while reading the transcripts. . . .
>
> [The defendant's ] attorney objected to the accuracy of the transcripts. The government filed a motion to the court to review the transcripts. The court considered the testimony of the FBI agent who supervised the preparation of the transcripts and independently compared the transcripts to the tape. The court found only insignificant errors. (Cites omitted).

*Hughes* 895 F.2d at 1147, n. 22.  The court upheld the utilization of transcripts by the jury.

The government requests a stipulation to the accuracy of the recordings and transcripts from the defendant. If the defendant fails to enter a stipulation, then the

United States requests an evidentiary hearing before this Court or a Magistrate Judge. If the defendant refuses to stipulate, the government will provide the Court with copies of the recordings for the Court's independent review and determination as to clarity of the tape, and the accuracy of the transcripts.

### F.      Expert Testimony: Fed. R. Evid. 702

The United States filed its Notice of Intent to Call Opinion Witnesses with the Court for both of its opinion witnesses. Said notice included the opinion witnesses' anticipated testimony and their qualifications. The United States incorporates its earlier notice by reference.

### G.      Judicial Notice of Fact

Rule 201 of the Federal Rules of Evidence permits a court to make findings of facts that are not subject to reasonable dispute, although jurors in criminal cases are not required to accept judicially noticed facts as conclusive against the defendant.  Fed. R. Evid. 201(g). Judicial notice may be taken at any stage of proceedings. The rules of evidence do not apply to requests for judicial notice. Fed. R. Evid. 104(a).

### H.      Self -Authenticating Documents: Fed. R. of Evid 902(4)

The government may seek to introduce certified court records. Such certified records of an official record that was recorded or filed in a public office as authorized by law are admissible under Rule 902(4) of the Federal Rules of

Evidence, without any extrinsic evidence of authenticity. That rule provides that:

> Certified copies of public records. A copy of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by:
>
> > (A)    the custodian or another person authorized to make the certification; or
> >
> > (B)    a certificate that complies with Rule 902(1) , (2) , or (3) , a federal statute, or a rule prescribed by the Supreme Court.

A typical example of a Rule 902(4) record would be a certified copy of a court transcript.

*See, e.g., Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006).


**<u>VOIR DIRE</u>**

Requested Voir Dire questions were submitted under a separate cover.

**<u>JURY INSTRUCTIONS</u>**

Proposed Jury Instructions were submitted under a separate cover.

Respectfully submitted,

MATTHEW SCHNEIDER                    Dated: August 12, 2019
United States Attorney

<u>s/ROY R. KRANZ</u>                          <u>s/TIMOTHY TURKELSON</u>
Assistant U.S. Attorney               Assistant United States Attorney
101 First Street, Suite 200           101 First Street, Suite 200
Bay City, MI 48708                    Bay City, Michigan 48708
(989) 895-5712                        Phone:  (989) 895-5712
roy.kranz@usdoj.gov                   E-Mail: timothy.turkelson@usdoj.gov
P56903                                P53748