UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  Case No.  18-cr-20794

                                     Hon. THOMAS LUDINGTON
MICHAEL JOHNSON,        United States District Judge

      Defendant.

_____

**GOVERNMENT'S TRIAL BRIEF**
_____

I.   **STATEMENT OF FACTS**

On or about October 23, 2018, Michael Lee Johnson, a non-Indian, began arguing with his intimate and dating partner, C.J., an Indian. The argument took place in a second story bedroom in the C.J.'s home which is on the Isabella Reservation. During the argument, C.J. attempted to leave the room numerous times over the course of 30 minutes. During those attempts, Johnson physically prevented C.J. from leaving by slamming her onto the bed C.J. repeatedly asked Johnon if she could leave.  Johnson responded each time with "[n]o Bitch, sit down," as he pushed her onto the bed. At one point during that incident, Johnson threatened to throw C.J. out of the second story window if Johnson thought she was calling the police..

The next day, C.J. told Johnson he had to move out of her residence. In response, Johnson grabbed C.J. by both arms and slammed her into a wall. Once against the wall, Johnson  grabbed C.J. by the throat and strangled her. As Johnson strangled C.J., he  banged her head against the wall. As Johnson continued to strangle C.J., he told her, "I should fuck you up." C.J. would later tell the police that it was difficult to breathe and she thought Johnson was going to kill her. After strangling C.J., Johnson picked her up by the throat and slammed her onto the stairs. C.J. began to scream for help hoping the neighbors would hear her. Johnson

then placed his hand over C.J.'s nose and mouth preventing her from breathing and screaming for help.

After the assault and strangulation, Johnson got into C.J.'s car where her six and nine-year-old daughters were located. Johnson told C.J. to drive him to Saginaw. During the drive, Johnson yelled at the kids, struck the victim numerous times, and said "I got something for you bitch. Imma shoot her, Imma take care of you." Once they arrived in Saginaw, Johnson slapped C.J. in the face, took money from her, and tried to take her keys. C.J. told Johnson that she believed he broke her arm and that she was going to the hospital. Johnson instructed C.J. her to tell the hospital staff that she injured her arm when trying to move a large cabinet.

C.J. ultimately suffered marks on her neck and face, a severely injured and swollen arm, a bruise and cut on the inside of her thigh, and an injured back.

Following his arrest and detention, Johnson tried to call C.J. numerous times, which C.J. blocked.  Undeterred, Johnson recruited numerous people to contact C.J. on his behalf requesting she drop the matter.

At one point while in pretrial custody, Johnson sent a letter to C.J. asking her to log in to his Facebook account and post something on his feed. C.J. logged into Johnson's Facebook as instructed and reviewed his private messages. In the messages, Johnson confessed to numerous people to assaulting C.J.  In one

message, Johnson stated, "I'm pretty sure I'm going to jail brother . . . I fucked up .

. . I put hands on . . . I choked her, slapped her. I jabbed her in the face, mouth . . . I

think her arm is broken." In another message, Johnson said "I committed domestic

assault." In yet another message, Johnson stated, "Domestic Assault, man I need to

go Something bad happened Serious . . . Ash I fucked up."

## II.   ANTICIPATED EVIDENTIARY ISSUES

### A.   Johnson May Not Introduce His Own Prior Statements

Johnson made statements to law enforcement, the victim, and to his

friends and family through the course of the investigation in this case that were

incriminating. These incriminating statements are admissible against him and the

government will admit them, under Federal Rule of Evidence 801(d)(2)(A) as

admissions by a party-opponent.

Since his arrest, Johnson has also written a multitude of letters to various

people and has called various people and denied particular aspects of the

allegations made against him or he attempted to mitigate his behavior in these

statements. The government anticipates that Johnson may attempt to introduce

these denials and or claims of self-defense through these prior statements  to

establish or bolster his claimed defense. Such statements are hearsay and

inadmissible. The statements are not admissible under Fed.R.Evid. 802(d)(2)(A),

which allows the use of an admission of a party opponent *against* that party. The rule, however, "does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005)(italics in original). If a defendant could present his own prior statements under Fed.R.Evid. 801(d)(2), then a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first- hand scrutiny by the jury." *Id*. (*citing United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000)). The Sixth Circuit reaffirmed this principle in *United States v. Ford*, 761 F.3d 641 (6th Cir. 2014). The court noted that the hearsay exception in Fed.R.Evid 801(d)(2) does not extend to a party's attempt to introduce his own statements through the testimony of other witnesses. *Id.* at 652. The court also rejected the defendant's claim that a failure to admit such evidence violated the Confrontation Clause or was an abuse of discretion under the so-called rule of completeness. *Id*. ("precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause.") The court observed that "[r]ight or wrong, this court has acknowledged that under *Costner* [684 F.2d 370 (6th Cir. 1982)], '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" *Ford*, at 652 (citing *United States v.*

*Adams*, 722 F.3d 788, 826 (6th Cir. 2013)(quoting *United States v. Shaver*, 89

F.App'x. 529, 533 (6th Cir. 2004))).

### B.    Impeachment by Contradiction

During the last trial, defendant testified that he had never assaulted the

victim or any other woman. He also testified that he never held the victim or

any other woman against their will. These statements were false and the

government was properly allowed to call two prior victims whom defendant had

previously assaulted and held against their will to impeach defendant's false

testimony. Should the defendant make similar claims during this trial, the

government will seek to have the same two prior victims testify to the

defendant's previous assaults on them for impeachment purposes.

Federal Rule of Evidence 608's restriction on other acts evidence applies

only to efforts to attack or support a witness's credibility that are based on his or

her character for truthfulness. Rule 608(b) does not bar extrinsic evidence of

other acts that is offered for the purpose of impeachment by contradiction.

"When a defendant makes a false statement during direct testimony, the

prosecution is allowed to prove, either through cross-examination or by rebuttal

witnesses, that the defendant lied as to that fact." *United States v. Crockett*, 435

F.3d 1305, 1313 (10th Cir. 2006) (citing *Walder v. United States*, 347 U.S. 62,

65 (1954)). "This is so even if the evidence elicited by the prosecution ordinarily might be collateral or otherwise inadmissible. This principle of cross-examination is known as the doctrine of "specific contradiction."" *Id*. (citations omitted.)

In *Walder*, the Supreme Court noted:

> Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him.  He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance upon the Government's disability to challenge his credibility.

*Walder*, 347 U.S. 62, 65 (1954).

The Ninth Circuit's decision in *United States v. Castillo*, 181 F.3d 1129 (9th Cir. 1999) is illustrative. On direct examination in a drug case, the defendant claimed that he would not have smuggled drugs "for a million dollars"; portrayed himself as an anti-drug counselor to youth, and said he never used drugs and wouldn't touch them. *Id*. at 1132. The district court allowed the government to present extrinsic evidence through a rebuttal witness to testify about the defendant's prior arrest for cocaine possession. As the court noted:

> [O]ne commentator has observed, "[c]ounsel and courts sometimes have difficulty distinguishing between Rule 608 impeachment and impeachment by contradiction." 4 Joseph M. McLaughlin,

*Weinstein's Federal Evidence*, '608.12[6][a] at 608-41 (2d ed.1999)
(Weinstein). Rule 608(b) prohibits the use of extrinsic evidence of
conduct to impeach a witness' credibility in terms of his general
veracity. In contrast, the concept of impeachment by contradiction
permits courts to admit extrinsic evidence that specific testimony is
false, because contradicted by other evidence:

[D]irect-examination testimony containing a broad disclaimer of
misconduct sometimes can open the door for extrinsic evidence to
contradict even though contradictory evidence is otherwise
inadmissible under Rules 404 and 608(b) and is, thus, collateral. This
approach has been justified on the grounds that the witness should not
be permitted to engage in perjury, mislead the trier of fact, and then
shield himself from impeachment by asserting the collateral-fact
doctrine.  2A Charles A. Wright & Victor J. Gold, Federal Practice
and Procedure, § 6119 at 116-17 (1993).

*Id*. at 1132-33.

The court went on to state that impeachment by contradiction is properly
considered under Rule 607, not Rule 608(b): The Second Circuit has noted that,
"Rule 607 appears to allow the continuation of federal practice in admitting
extrinsic evidence to impeach specific errors or falsehoods in a witness' direct
testimony, subject to Rule 403 considerations." *Id*. at 1133. (citing *United States
v. Benedetto*, 571 F.2d 1246, 1250 n. 7 (2d Cir. 1978)).

## C.    Admissibility of Business Records and Duplicates

The government intends to admit business records in this case.
Specifically, the governments intends to admit select Facebook records from
Johnson's Facebook account, which are self-authenticating via FRE 902(11).

These records have been made available to defendant. Such records made and

kept in the regular course of business are admissible under Rule 803(6) of the

Federal Rules of Evidence. That rule provides that:

> The following are not excluded by the hearsay rule, even
> though the declarant is available as a witness:
>
> (6) A memorandum, report, record, or data compilation, in any
> form, of acts, events, conditions, opinions, or diagnoses, made
> at or near the time by or from information transmitted by, a
> person with knowledge, if kept in the course of a regularly
> conducted business activity, and if it was the regular practice
> of that business activity to make the memorandum, report,
> record, or data compilation, all as shown by the testimony of
> the custodian or other qualified witness, unless the source of
> information or the method or circumstances or preparation
> indicate lack of trustworthiness. The term "business" as used in
> this paragraph includes business, institution, association,
> profession, occupation, and calling of every kind, whether or
> not conducted for profit.

It is not necessary that the authenticating witness be the actual recorder of

the data or have personal knowledge of it. All that is required is that the witness

be familiar with the record keeping system. *United States v. Hathaway*, 798 F.2d

902, 906 (6th Cir. 1986); *United States v. Reese*, 568 F.2d 1246, 1252 (6th Cir.

1977).

The Federal Rules of Evidence allow the use of duplicates to the same

extent as originals unless there is a genuine question as to their authenticity. Fed.

R. Evid. 1003. Federal Rule of Evidence 1001(4) defines "duplicate" to include

photocopies.

### D.     Admissibility of Recordings

The Government will admit recordings of portions of Johnson jail calls where he is either incrimination himself or committing witness tampering. The admission of recordings is a discretionary matter for the trial court.  *United States v. Hughes*, 895 F.2d 1135, 1147 (6th Cir. 1990); *United States v. Enright*, 579 F.2d 980, 988 (6th Cir. 1978). In exercising its discretion, the court must decide if the tapes are: (1) authentic; (2) accurate; (3) trustworthy; and, (4) audible and sufficiently comprehensible for the jury to consider. *United States v. Wilkinson,* 53 F.3d 757, 761 (6th Cir. 1995) (citing favorably *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983)).

In making the decision to admit or exclude the recordings, the trial court may conduct an evidentiary hearing in order to listen to the relevant tape recordings to determine if they are audible and comprehensible. *See United States v. Scarborough*, 43 F.3d 1021, 1024 (6th Cir. 1994); s*ee also*, *United States v. Terry*, 729 F.2d 1063, 1068 (6th Cir. 1984). *Compare*, *United States v. Smith*, 537 F.2d 862, 864 (6th Cir. 1976) (inaccuracies held to be harmless error where defendant was aware of them and failed to object). Under *Robinson*, the final test for admission, assuming the tapes are authentic, accurate and trustworthy, is, are the

unintelligible portions so "substantial as to render the recording as a whole untrustworthy." *Robinson,* 707 F.2d at 876.

The Sixth Circuit has held that tape recordings are admissible unless incomprehensible portions of the tape are so substantial as to render the recordings wholly untrustworthy. *United States v. West*, 948 F.2d 1042, 1044 (6th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992). "It is well settled that the decision to admit tape recordings at trial rests within the sound discretion of the trial court." *Id.*  Courts also have the discretion to allow the use of accurate transcripts of tape-recorded conversations as an aid for the jury. *Id.*

Here, the jail call recordings of the defendant are audible and comprehensible.  The defendant has been provided with copies of the recordings..

The government also intends on using transcripts of the recordings to aid the jury during the trial. The use of transcripts, as an evidentiary aid without admission into evidence, is also a discretionary matter for the trial court. *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995); *United States v. Hughes*, 895 F.2d 1135, (6th Cir. 1990); *United States v. Cooke*, 795 F.2d 527, 530 (6th Cir. 1986); *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983); *United States v. Crane*, 632 F.2d 663, 664 (6th Cir. 1980); *United States v. Vinson*, 606 F.2d 149, 155 (6th Cir.), *cert. denied*, 444 U.S. 1074 (1980); *United States v.*

*Enright*, 579 F.2d 980, 988 n.8 (6th Cir. 1978).

In *Vinson*, the trial court reviewed the recordings and transcripts before the trial, and submitted them to the jury <u>without</u> a stipulation as to their accuracy by the defendant. *Vinson*, 606 F.2d at 155. The Sixth Circuit has noted that while a stipulation as to accuracy is preferred, appellate review will focus on the defendant's opportunity to object and correct any errors in the transcripts. *Id.*

The Sixth Circuit reaffirmed its position of allowing the use of transcripts as an aid to the jury without a stipulation in *United States v. Hughes*. Citing *Robinson*, with approval the court stated:

> In the absence of the parties' stipulation to a transcript's accuracy, the transcriber should attest to the accuracy of the transcript and the trial court should make an independent determination of its accuracy by listening to the tape while reading the transcripts. . . .
>
> [The defendant's ] attorney objected to the accuracy of the transcripts. The government filed a motion to the court to review the transcripts. The court considered the testimony of the FBI agent who supervised the preparation of the transcripts and independently compared the transcripts to the tape. The court found only insignificant errors. (Cites omitted).

*Hughes* 895 F.2d at 1147, n. 22.  The court upheld the utilization of transcripts by the jury.

The government requests a stipulation to the accuracy of the recordings and transcripts from the defendant. If the defendant fails to enter a stipulation, then the

United States requests an evidentiary hearing before this Court or a Magistrate

Judge. If the defendant refuses to stipulate, the government will provide the Court

with copies of the recordings for the Court's independent review and determination

as to clarity of the tape, and the accuracy of the transcripts.


### E.       Expert Testimony: Fed. R. Evid. 702

The United States filed  Notices of Intent to Call Opinion Witnesses which

complies with Rule 16 for both of its opinion witnesses. (ECF Nos. 125, 138, 139,

and 189). Said notice included the opinion witnesses' anticipated testimony and

their qualifications. The United States incorporates its earlier notice by reference.

### F.       Judicial Notice of Fact

Rule 201 of the Federal Rules of Evidence permits a court to make

findings of facts that are not subject to reasonable dispute, although jurors in

criminal cases are not required to accept judicially noticed facts as conclusive

against the defendant.  Fed. R. Evid. 201(g). Judicial notice may be taken at any

stage of proceedings. The rules of evidence do not apply to requests for judicial

notice. Fed. R. Evid. 104(a). An example of how this might come up is if

Johnson testifies differently than his testimony at the first trial, is impeached

with his previous testimony and then claims the certified transcript from the last

trial is not accurate. The Government would seek judicial notice of its accuracy.

### G.        Self-Authenticating Documents: Fed. R. of Evid 902(4)

The government may seek to introduce certified court records. Such

certified records of an official record that was recorded or filed in a public office

as authorized by law are admissible under Rule 902(4) of the Federal Rules of

Evidence, without any extrinsic evidence of authenticity. That rule provides that:

> Certified copies of public records. A copy of an official record—or a
> copy of a document that was recorded or filed in a public office as
> authorized by law—if the copy is certified as correct by:
>
>> (A)     the custodian or another person authorized to make the
>> certification; or
>
>> (B)     a certificate that complies with Rule 902(1) , (2) , or (3) ,
>> a federal statute, or a rule prescribed by the Supreme Court.
>
> A typical example of a Rule 902(4) record would be a certified copy
> of a court transcript.

*See, e.g., Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006).

This could come up if Johnson testifies that he has never been convicted of

anything before. The Government would then seek to admit certified copies of his

prior convictions to impeach him.

### H.      Defendant's possible exclusion from the courtroom.

In the first trial, defendant's behavior caused him to be excluded from the

courtroom multiple times throughout the trial. The government believes this could

become necessary again. "[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.* Section 5.01 of the Bench Book for U.S. District Judges provides directions for how this Court should handle Mr. Johnson should he again become disruptive during the course of the trial.

## I.    Defendant might attempt to dismiss his attorneys and represent himself.

Leading up to the current trial, defendant has dismissed a number of his former attorneys and briefly represented himself during the last trial. The government believes that he may attempt to do this again. If he does, the government believes the court should read verbatim "1.02 Assignment of counsel or pro se representation" from the Bench Book for U.S. District Judges.

## J.    Impeachment of Defendant with his prior trial testimony

Defendant moved to preclude the government from offering his prior trial testimony in its case-in-chief.  (ECF No. 140). The court granted defendant's motion because it could not "conclude that Mr. Johnson's decision to testify…was

wholly unaffected by the violation of his Sixth Amendment right to counsel." (ECF 194, PageID.2031. Defendant's prior trial testimony is, however,  admissible for impeachment. In *Michigan v. Harvey,* 494 U.S. 344, 345-46 and 350-52 (1990), the Court held that a statement obtained from a defendant in violation of the Sixth Amendment could still be used to impeach his false or inconsistent testimony testimony at trial. Based on this Court's decision, the government will not introduce defendant's prior testimony during it case in chief but does intend to use the prior testimony for impeachment purposes should the defendant testify in a manner that is inconsistent with his previous trial testimony.

## III.   <u>VOIR DIRE</u>

Requested Voir Dire questions were submitted under a separate cover. The government understands that it will be allowed to ask questions of the jurors during the voir dire process as well.

## IV.   <u>JURY INSTRUCTIONS</u>

Proposed Jury Instructions were submitted under a separate cover.

Respectfully submitted,

DAWN N. ISON                                    Dated: October 24, 2024
United States Attorney


s/ROY R. KRANZ                          s/TIMOTHY TURKELSON
Assistant U.S. Attorney                 Assistant United States Attorney
101 First Street, Suite 200             101 First Street, Suite 200
Bay City, MI 48708                      Bay City, Michigan 48708
(989) 895-5712                          Phone:  (989) 895-5712
roy.kranz@usdoj.gov                     E-Mail: timothy.turkelson@usdoj.gov
P56903                                  P53748


## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, I had caused to be electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of recod.

Dated: October 24, 2024          s/ROY R. KRANZ
                                 Assistant United States Attorney